UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
:
JEFFREY L. MCKIVER, :
:
                        Plaintiff, :       17-CV-9639 (JMF)
:
         -v- :       OPINION AND ORDER
:
THE FEDERAL BUREAU OF PRISONS OF NEW :
YORK, ANTHONY BUSSANICH, and PAMELA :
HAMILTON, :
:
                        Defendants. :
:
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Jeffrey McKiver, a federal inmate proceeding without counsel, filed this action against the "Federal Bureau Of Prisons Of New York [*sic*]" (the "BOP"), Dr. Anthony Bussanich, and Dr. Pamela Hamilton, alleging medical malpractice under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671-80 ("FTCA"), and violation of his civil rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in connection with medical care that he allegedly received (or did not, as the case may be) while detained at the federal Metropolitan Correctional Center in New York, New York. In an Order entered on April 10, 2018, the Court construed McKiver's pleadings to assert "*Bivens* claims against Defendants Bussanich and Hamilton . . . and FTCA claims against the . . . BOP," and dismissed the "claims against BOP" for lack of subject-matter jurisdiction. *See* Docket No. 9 ("April 10, 2018 Order"),

at 1. Defendants now move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss.[1] For the reasons stated below, their motion is granted.

## BACKGROUND

The following facts are taken from McKiver's pleadings and from materials attached to, or referenced in, those pleadings.[2] For purposes of this motion, they are assumed to be true. *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001).

At all times relevant to this case, McKiver was a federal pretrial detainee housed at the Metropolitan Correctional Center (the "MCC") in New York. In March 2016, McKiver slipped on a wet floor at the MCC and, while trying to regain his balance, hit his left hand against a wall. *See* Compl. 5. A few days later, McKiver requested an appointment at the MCC medical clinic, but he was not seen by MCC medical staff until April 7, 2016. *See id.* at 5-6. On that date, an unidentified physician ordered x-rays of McKiver's left hand and determined that his pinkie finger was fractured. *See* Supp. Compl. *8, 11.[3] The physician wrapped McKiver's hand, put a splint on the broken finger, and prescribed him pain medication. *See* Compl. 6; Supp. Compl. *23-24. McKiver takes issue with this treatment, alleging that he should have been sent to a "hospital to have a cast put on [his] hand because it was broken." Compl. 6.

---

[1] In the alternative, Defendants move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. The Court need not and does not address that portion of Defendants' motion.

[2] McKiver filed his Complaint in December 2017. *See* Docket No. 1 ("Compl."). A few weeks later, he filed a letter, *see* Docket No. 5 ("Supp. Compl."), which the Court construed to be "a supplement to the complaint," April 10, 2018 Order 1.

[3] Some of McKiver's submissions include inconsistent and non-sequential pagination from a variety of documents. Where that is the case, the Court includes an asterisk and cites to the page number or numbers generated by the ECF system.

Approximately one year later, on March 8, 2017, McKiver underwent successful finger surgery at Kingsbrook Jewish Medical Center. *See* Suppl. Compl. *4-5. In the interim, he had multiple consultations with medical staff about surgery — although McKiver complains that "it was just talking about" surgery and was "not getting anything done t[o] fix the problem." *See id.* at *24. On January 4, 2017, for instance, Dr. Bussanich examined McKiver. *See id.* at *13. McKiver reported a "dull" pain in his wrist and thumb. *See id.* Dr. Bussanich renewed McKiver's medications for asthma, hypertension, and heart disease, and prescribed pain medication for McKiver's left hand. *See* Docket No. 21 ("Aassiddaa Decl."), Ex. 2, at 3. Dr. Bussanich also ordered updated lab work and an electrocardiogram to assess McKiver's cardiac risk for the upcoming hand surgery and prescribed a hand splint. *See* Supp. Compl. *19; Aassiddaa Decl., Ex. 2, at 3. In a follow-up appointment with the hand surgeon a few weeks after surgery, McKiver exhibited a full range of hand motion and showed a well-healed incision. *See* Supp. Compl. *7.

Finally, McKiver identifies other health concerns that he alleges were unaddressed (or insufficiently addressed) by BOP physicians. He alleges that he needed "some teeth extracted and [he] did not get" this treatment from Dr. Hamilton, *see* Compl. 6; Supp. Compl. *15; that his mattress was "not thick enough for any human to sleep on" and that he needed a thicker one due to back pain, *see* Compl. 6; that he required a "breathing machine . . . to help [him] breathe" on account of his "asthma and high blood pressure," Compl. 6; *see* Docket No. 13, at *20-26; and that he was allegedly not provided a sleep study that unidentified doctors from Bellevue Hospital requested, *see* Compl. 6. Dr. Bussanich allegedly requested a thicker mattress for McKiver, but McKiver purportedly never received it. *See* Supp. Compl. *19.

McKiver filed his original Complaint in December 2017, naming as Defendants "The Federal Bureau Of Prisons Of New York," Dr. Bussanich, and Dr. Hamilton. Compl. 1. He alleged violations of, among other things, his rights under the Eighth Amendment to "Adequate Medical Care" and "to be free from Cruel and Unusual Punishment." *Id.* at 2. A few weeks later, he submitted a letter attaching an administrative claim form dated January 13, 2018, and described this case as "A Federal Tort Claim Act, Known as a Bivens claim Using 28 USC 1331 to obtain relief from violation of Federal Law." Supp. Compl. *1-2. In the April 10, 2018 Order, the Court construed the two documents together to assert "*Bivens* claims against Defendants Bussanich and Hamilton . . . and FTCA claims" against the BOP. April 10, 2018 Order 1. Noting that McKiver had "failed to allege facts showing that he exhausted the appropriate administrative remedies" before bringing the latter, the Court dismissed "Plaintiff's FTCA claims under the doctrine of sovereign immunity." *Id.* at 3-4.

Defendants now move to dismiss. With respect to the FTCA claims, Defendants ask the Court to substitute the United States for Dr. Bussanich and Dr. Hamilton and then, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the claims for lack of subject-matter jurisdiction. With respect to the *Bivens* claims, Defendants move, pursuant to Rule 12(b)(6), to dismiss for failure to state a claim.

## LEGAL STANDARDS

A Rule 12(b)(1) motion challenges the court's subject-matter jurisdiction over the case. *See, e.g.*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all

4

reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted), *aff'd*, 561 U.S. 247 (2010). Moreover, a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [a court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

By contrast, a Rule 12(b)(6) motion calls for the court to determine whether the facts alleged in the complaint are sufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). More specifically, the court must distinguish between facts on the one hand and "mere conclusory statements" or legal conclusions on the other; the latter are not entitled to the presumption of truth and must be disregarded. *Iqbal*, 556 U.S. at 678-79. The court must then "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must show "more than a sheer possibility that a defendant acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at

5

555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.

As McKiver is proceeding *pro se*, the Court has an obligation to construe his pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret his submissions "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted).  Nevertheless, "a *pro se* litigant must still state a plausible claim for relief.  Put another way, the Court's duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it."  *Maione v. Med. Answering Servs., LLC*, No. 17-CV-8106 (JMF), 2018 WL 4682018, at *2 (S.D.N.Y. Sept. 28, 2018) (internal quotation marks omitted); *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("[P]*ro se* complaints must contain sufficient factual allegations to meet the plausibility standard . . . .").

## DISCUSSION

Defendants' first request — to dismiss McKiver's FTCA claim for lack of subject-matter jurisdiction — is puzzling for the simple reason that the Court already granted that relief in its April 10, 2018 Order.  In that Order, the Court construed McKiver's pleadings to raise both a *Bivens* claim and an FTCA claim, but the latter was construed to be only against the BOP.  *See* April 10, 2018 Order 1.  Treating the FTCA claim as a claim "against the federal government," *id.* at 2 — that is, against the United States — the Court dismissed the claim for lack of subject-matter jurisdiction because McKiver had "failed to allege facts showing that he exhausted the appropriate administrative remedies before bringing this action."  *Id.* at 3-4.  McKiver did not seek reconsideration of that Order.  To the contrary, in a (procedurally improper) submission only seventeen days later, McKiver suggested, if not confirmed, that the FTCA claim had been

asserted only against the BOP while his claims against Dr. Bussanich and Dr. Hamilton were brought under the Eighth and Fourteenth Amendments. *See* Docket No. 13, at 5; *see also* Docket No. 14 (noting that McKiver's April 27, 2018 submission would be "disregarded as premature"). Accordingly, as far as the Court is concerned, the FTCA claim was previously dismissed for lack of subject-matter jurisdiction and is no longer part of the case.

That said, to the extent that McKiver's pleadings can or should be construed to assert FTCA claims against Dr. Bussanich and Dr. Hamilton as well, Defendants are on firm ground in seeking dismissal of those claims.[4] An action brought under the FTCA "shall not be instituted" against the United States "unless" (1) "the claimant shall have first presented the claim to the appropriate Federal agency" and (2) the claim is either (a) "finally denied by the agency in writing" or (b) the agency fails "to make final disposition" of the claim "within six months after it is filed." 28 U.S.C. § 2675(a). This exhaustion requirement is jurisdictional and, accordingly, the later denial of an administrative claim cannot cure a prematurely filed action. *See McNeil v. United States*, 508 U.S. 106, 111-13 (1993); *accord Makarova*, 201 F.3d at 113; *see also McIntosh v. United States*, 2018 WL 1275119, at *6 n.6 (S.D.N.Y. Mar. 7, 2018) (reaffirming that the exhaustion requirement is jurisdictional).

McKiver failed to comply with these requirements here. To be sure, he did file the relevant claim form (three substantially similar, but not identical, claim forms, to be precise). *See* Supp. Compl. *2; Docket No. 13, at *27; Docket No. 32, at *28; *see also* Docket No. 37

---

[4] In that event, they are also on firm ground seeking substitution of the United States for Dr. Bussanich and Dr. Hamilton. *See* Docket No. 20 ("Defs.' Mem."), at 9; *see also* 28 U.S.C. § 2679(d)(2) (providing that, upon certification that a defendant employee was acting within the scope of his or her federal employment, "the United States shall be substituted as the party defendant"); *Vailette v. Lindsay*, No. 11-CV-3610 (NGG) (RLM), 2014 WL 4101513, at *4 (E.D.N.Y. Aug. 18, 2014) ("A brief on behalf of named defendants is sufficient to certify that they were employees acting within the scope of their employment.").

("Defs.' Reply"), at 2; Docket No. 22, ¶ 24. But he did so with the Court, not with the relevant federal agency.[5] And more significantly, he did so *after* he "instituted" the present suit, which does not suffice. *See, e.g.*, *Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 269 (S.D.N.Y. 2011). The only potential argument to be made to the contrary (which, to be clear, McKiver himself does not make) is that the case was not "instituted" until August 20, 2018, when the Attorney General certified (through Defendants' brief) that Dr. Bussanich and Dr. Hamilton were acting within the scope of their official duties in providing the medical care to McKiver at issue in this lawsuit. *See* Defs.' Mem. 9. That argument does find some support in a handful of district court decisions. *See, e.g.*, *Grancio v. De Vecchio*, 572 F. Supp. 2d 299, 311 (E.D.N.Y. 2008) (holding that "a tort claim against an individual federal employee is not deemed a 'claim against the United States' — and, as a result, subject to the exhaustion requirement — until the Attorney General has certified that the employee was acting within the scope of his or her employment"); *see also Culbertson v. Cameron*, No. 08-CV-4838 (SLT) (LB), 2010 WL 1269777, at *6 (E.D.N.Y. Mar. 30, 2010) (following *Grancio*). But putting aside whether the reasoning of those decisions is consistent with the statute, the present case is distinguishable because McKiver's initial pleadings included his FTCA claim and explicitly named the "Federal Bureau Of Prisons Of New York [*sic*]" as a Defendant. Compl. 1. Thus, the Court — in its April 10, 2018 Order — effectively deemed the suit to be against the United States. It follows that any surviving

---

[5] Timing issues aside, filing a claim with a court rather than the relevant agency might not be fatal, as the statute defines the term "Federal agency" to include the judicial branch, *see* 28 U.S.C. § 2671, and a claim can be deemed constructively filed if the claimant "files the claim with the wrong federal agency and that agency fails to transfer the claim," *Mosseri v. FDIC*, 104 F.3d 356, 1996 WL 734046 (Table), at *2 (2d Cir. 1996) (summary order) (citing 28 C.F.R. § 14.2(b)). The Court need not and does not address whether that is the case here.

FTCA claims were "instituted" with the filing of McKiver's initial Complaint and that they must be dismissed for lack of jurisdiction. *See McNeil*, 508 U.S. at 112-13.

Defendants make a compelling argument for dismissal of McKiver's *Bivens* claims on exhaustion grounds as well, *see* Defs.' Mem. 10-13; Defs.' Reply 2-6, but the Court need not address it because, unlike with the FTCA, exhaustion of those claims is not a jurisdictional requirement, *see, e.g.*, *Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that "failure to exhaust is an *affirmative defense* under the PLRA" (emphasis added)), and the claims fail as a matter of law for other reasons. To state a claim based on the denial of medical care, a federal pretrial detainee — which is what McKiver was at the time of the relevant events — "must plead facts showing that (1) the deprivation of medical care is objectively sufficiently serious in light of a medical condition that may produce death, degeneration, or extreme pain, and (2) the defendant-official intentionally or recklessly failed to act with reasonable care even though the defendant-official knew, or should have known, that the alleged medical condition posed an excessive risk to health or safety." *Ramirez v. Tatum*, No. 17-CV-7801 (LGS), 2018 WL 6655600, at *6 (S.D.N.Y. Dec. 19, 2018) (internal quotation marks, citations, and ellipses omitted). It is doubtful that McKiver's allegations even meet the first requirement, as there is little to suggest that any of his medical conditions was one "of urgency, one that may produce death, degeneration, or extreme pain." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). But even if McKiver could meet the first requirement, he fails to plausibly allege that either Dr. Bussanich or Dr. Hamilton exhibited "deliberate indifference to [his] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

First, conclusory allegations aside, the allegations in McKiver's pleadings fall far short of showing that Dr. Bussanich knew or should have known that the alleged delay in having

McKiver seen by a hand specialist, in not providing him with a breathing machine, and in not providing him with a thicker mattress "posed an excessive risk to [his] health or safety." *Ramirez*, 2018 WL 6655600, at *6; *see Melvin v. Cty. of Westchester*, No. 14-CV-2995 (KMK), 2016 WL 1254394, at *10 (S.D.N.Y. Mar. 29, 2016) ("[C]onclusory allegations that medical staff defendants were aware of a [prisoner's] medical needs and failed to provide adequate care are generally insufficient." (internal quotation marks omitted)). To the contrary, the pleadings and medical notes attached or referenced in the pleadings demonstrate that Dr. Bussanich attended to each of McKiver's complaints. *See* Compl. 5-6; Supp. Compl. *1, 9, 10, 11, 12, 13, 19, 24; Aassiddaa Decl., Ex. 2, at 1-4. With respect to McKiver's hand (the most serious of his alleged medical conditions), for instance, the pleadings show that x-ray images were taken, a splint was put on the injured finger, his hand was wrapped, and he was prescribed pain medication. *See* Compl. 5-6. Thereafter, he was seen multiple times to determine if surgery was appropriate given, among other things, a chronic cardiac condition. *See* Supp. Compl. *24. And after surgery was performed on the finger, Dr. Bussanich examined it and arranged for a follow-up appointment with the hand surgeon. *See* Supp. Compl. *10-11. McKiver may disagree with some of Dr. Bussanich's treatment decisions, but "disagreements over medications, diagnostic techniques, forms of treatment or the need for specialists or the timing of their intervention are insufficient" to state a claim for deliberate indifference. *Skyers v. United States*, No. 12-CV-3432 (RWS), 2013 WL 3340292, at *10 (S.D.N.Y. July 2, 2013) (internal quotation marks and citations omitted).

McKiver's allegations with respect to Dr. Hamilton are similarly deficient. McKiver asserts that he "need[ed] to have some teeth extracted," Compl. 6, and that, although he allegedly had sought a dental appointment between December 2016 and March 2017, the "dentis[t] . . .

put[] off" his "appointments so that she would not have to do the work," Supp. Compl. *25. But the mere assertion that Dr. Hamilton knew he was in "a lot of pain," *id.* at *23, does not suffice to state a claim. *See, e.g.*, *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (noting that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). And he plainly comes nowhere near establishing that she knew or should have known that his tooth problems "posed an excessive risk to [his] health or safety." *Ramirez*, 2018 WL 6655600, at *6. Moreover, once again, the pleadings undermine, rather than confirm, any claim of deliberate indifference. During the one interaction between Dr. Hamilton and McKiver identified in the pleadings, Dr. Hamilton treated McKiver for a painful toothache, created a plan of care, and reviewed with him what to do to get help in case of a dental emergency. *See* Supp. Compl. *15-18; Aassiddaa Decl., Ex. 1, at 1-5. Such care belies any claim of deliberate indifference and thus defeats McKiver's *Bivens* claim against Dr. Hamilton as well. *See, e.g.*, *Washington v. City of N.Y.*, No. 10-CV-389 (LTS), 2011 WL 566801, at *2 (S.D.N.Y. Feb. 15, 2011); *Kee v. Hasty*, No. 01-CV-2123 (DF), 2004 WL 807071, at *22 (S.D.N.Y. Apr. 14, 2004).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED, and McKiver's claims are dismissed. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marks omitted), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482

11

F.3d 184, 200 (2d Cir. 2007). Exercising that discretion here, the Court declines to grant McKiver leave to amend the Complaint *sua sponte*. First, a district court may deny leave to amend when, as here, amendment would be futile because the problems with a plaintiff's claims are "substantive" and "better pleading will not cure" them. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Second, McKiver has not requested leave to file an Amended Complaint, and he "provides no indication that he possesses facts with which he could allege valid claims against" the BOP, Dr. Bussanich, or Dr. Hamilton. *See Dobbins v. Ponte*, No. 15-CV-3091 (JMF), 2017 WL 3309726, at *7 (S.D.N.Y. Aug. 2, 2017); *Hays v. City of New York*, No. 14-CV-10126 (JMF), 2017 WL 782496, at *8 (S.D.N.Y. Feb. 28, 2017).

The Court certifies pursuant to 28 U.S.C.§ 1915(a)(3) that any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is therefore denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate Docket No. 19, to mail a copy of this Opinion and Order to McKiver, and to close the case.

SO ORDERED.

Dated: March 26, 2019
New York, New York

JESSE M. FURMAN
United States District Judge